Michael Friedman v. Commissioner.
Friedman v. Commissioner
Docket No. 112563.
United States Tax Court
1943 Tax Ct. Memo LEXIS 216; 2 T.C.M. (CCH) 382; T.C.M. (RIA) 43321; June 30, 1943
*216 Benjamin Mahler, Esq., 39 Broadway, New York City, for the petitioner. B. W. Berg, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency of income tax for the calendar year 1937 in the amount of $1,120.84. Petitioner claims an overpayment of $196.40, The questions in issue are (1) whether petitioner sustained an ordinary loss deductible in full or a capital loss limited to $2,000 upon the transfer of an interest in real estate; and (2) Is petitioner entitled to a deduction of $18,750 as an ordinary and necessary business expense? Findings of Fact Petitioner is a resident of Brooklyn, New York, engaged in the retail credit clothing business. He filed his tax return for the year 1937 with the collector for the first collection district of New York. Petitioner keeps his books and files his returns on the accrual installment basis. In 1919 petitioner and his brother, Nathan Friedman, became associated together as equal partners in the retail installment clothing business in Brooklyn, New York. The partnership continued until the death of Nathan Friedman on February 5, 1935. In carrying on this business, the partnership *217 operated two stores, one at 1135 Broadway, Brooklyn, New York, known as the "Mutual Credit Clothing", and the other at 287 Livingston Street, Brooklyn, New York, known as the "Kelly." The building located at 1135 Broadway was acquired in 1923, and was occupied by the partnership and petitioner for business purposes from that date until July 1, 1936. At the time this property was purchased, it was encumbered with a mortgage in the amount of $28,500, which the partnership and petitioner reduced to $12,000. After the death of Nathan Friedman, petitioner continued to operate the business. On June 7, 1936, Anna Friedman, the widow of Nathan Friedman, commenced an action against petitioner, claiming that he was operating the business of the partnership solely for his personal account and benefit, and praying for the appointment of a receiver for the business. Thereafter, and on June 15, 1936, petitioner agreed to purchase from the estate of Nathan Friedman, the interest of the estate in the partnership at a valuation to be determined by three accountants on arbitration. It was provided that pending the determination of the valuation of decedent's interest in the partnership, petitioner *218 would pay to Anna Friedman the sum of $30,000 on or before June 17, 1936, and thereafter one-half of the net surplus arising from the monthly collections, or the sum of $5,000 per month, whichever was greater. The assets of the partnership were transferred to Anna Friedman's attorney, as trustee, and all checks were to be countersigned by him. In the event any default occurred in the payments, the trustee would have the right to sell all the assets at public auction. Thereafter, Anna Friedman decided that she did not wish to be bound by the determination of the arbitrators, and disavowed her agreement to be bound by their decision as to the value of the deceased's interest in the partnership. Thereupon the matter was referred back to the court. On May 12, 1937, in open court, petitioner agreed to pay the estate of Nathan Friedman the sum of $118,750 as representing the decedent's interest in the partnership. As part of that stiuplation, petitioner agreed to execute and deliver to the estate of Nathan Friedman and Anna Friedman, or their nominees a quit-claim deed of all petitioner's right, title, and interest in the premises known as 1135 Broadway, Brooklyn, New York. The stipulation *219 contained the following recitation: The deed to be executed of the Broadway premises shall contain a clause wherein Anna Friedman shall assume the mortgage obligation upon said premises and agree to hold Michael Friedman free and harmless from any liability upon the bond or mortgage debt, it being understood that the said mortgage indebtedness amounts to no more than the principal sum of approximately $12,000. If for any reason Anna Friedman determines not to accept said premises upon the conditions herein set forth, both parties shall be released of all obligations herein set forth with respect to said premises and this agreement shall otherwise be in full force and effect, but in that event, the Estate of Nathan Friedman shall execute a quit-claim deed of said premises to Michael Friedman on condition that Michael Friedman assumes the responsibility to pay all charges against those premises, mortgage, taxes, or anything else, to hold the estate safe and harmless from any liability on the mortgage debt which he shall in that event assume. Michael Friedman, however, shall also have the right to refuse to accept said property upon said conditions. Thereafter, on October 28, 1937, *220 petitioner conveyed this property to Anna Friedman for one dollar and other good and valuable considerations. The deed was subject to a mortgage reduced to the sum of $12,000 and contained the following clause: And the party of the second part hereby assumes payment of said mortgage above mentioned and agrees to hold the party of the first part safe and harmless from any claim, obligation or liability in connection therewith. Petitioner did not abandon the property located at 1135 Broadway, Brooklyn, New York. The conveyance to Anna Friedman of this property was a sale or exchange of a capital asset, and petitioner's loss is a capital loss limited to $2,000. Petitioner suffered no loss in 1937 from the acquisition of his deceased brother's interest in the partnership. Opinion Issue 1. The first issue presented is whether petitioner in conveying his interest in the Broadway property to Anna Friedman sustained an ordinary loss deductible in full or a capital loss limited to $2,000, under the provisions of section 117(d) of the Revenue Act of 1936. Petitioner contends that his equity in the property was without value prior to the conveyance and that he, in effect, abandoned *221 the property and thus is entitled to a full loss of $12,624.20. Respondent claims that the property was not abandoned, that the conveyance was voluntary, and that petitioner received benefits from the conveyance. Under the facts, respondent's contentions must prevail. The property was conveyed to Anna Friedman as part of an opencourt settlement. She, as executrix of her husband's estate was suing for the estate's interest in the partnership. After protracted litigation, petitioner agreed to pay her the sum of $118,750 as the value of her husband's interest in the partnership. As part of the settlement, it was agreed that petitioner would convey the Broadway property to Anna Friedman, provided she assumed the mortgage and agreed to hold petitioner harmless from all obligations and liabilities in connection with the property. This she agreed to do. Petitioner claims that the property was purchased in 1923 subject to a mortgage of $20,000 and that at that time neither he nor his brother incurred any personal liability on the bond. However, he admits that the mortgagee demanded payments on the principal of the mortgage at various times. This would indicate that the mortgage had become *222 due and payable. Petitioner has not proven that neither he nor his brother did not assume the payment of the mortgage after 1923. The fact that the open-court stipulation provided that as a condition to the conveyance, Anna Friedman would assume payment of the principal of the mortgage indicates that there was personal liability on the part of petitioner and his brother for the payment of the principal. This is strengthened by the recitation in the deed of "other good and valuable considerations" for the conveyance. Petitioner claims that the property was without value at the time of the conveyance. This contention, however, is weakened by the fact that Anna Friedman, who had first choice in either taking or refusing the property, decided to take it. Evidently she thought that not only did it have value but a sufficiently large enough value to warrant her assuming the payment of the mortgage. The assumption by Anna Friedman of the payment of the mortgage and her agreement to hold petitioner "safe and harmless from any claim, obligation or liability in connection therewith" were benefits derived by petitioner from the conveyance. It is held that petitioner did not abandon the property. *223 ; aff'd, . Petitioner does not deny that the conveyance was his voluntary act. The deed recited a good and valuable consideration. Both he and Anna Friedman were dealing at arm's length. These facts compel the conclusion that the conveyance was a sale of capital assets. To constitute a sale, there must be parties standing in the relation of buyer and seller, their minds must assent to the same proposition, and a consideration must pass. . A sale in its usual sense includes voluntary action by the owner and a consideration. . In this case both elements are present. The cases relied upon by petitioner are inapplicable here. They relate to a situation where the taxpayer abandoned his property as worthless. Under the facts of this case, it cannot be said that petitioner abandoned his property. Under the circumstances, it is held that petitioner sustained a capital loss limited to $2,000 pursuant to the provisions of section 117(d) of the Revenue *224 Act of 1936. Issue 2. The next question is whether petitioner is entitled to a deduction of $18,750 for the year 1937 as an ordinary and necessary business expense. The basis of his claim is that he paid the estate of Nathan Friedman the sum of $118,750 when the interest of the decedent in the partnership was not worth more than $100,000. He argues that the excess, the sum of $18,150, was paid by him to avoid the harassments of litigation. There is little merit to petitioner's contentions. Under New York law, the legal representative of his deceased partner was entitled to receive the value of the decedent's interest in the partnership as of February 5, 1935, the date of the partner's death. Both petitioner and Anna Friedman, the estate's executrix were dealing at arm's length. Petitioner was under neither a legal nor a moral obligation to pay more than the value of his brother's interest. If as he claims, the value of his brother's interest in the partnership was only $100,000, then the payment of any sum in excess of that amount was a gift and certainly not deductible for income tax purposes. We held, in , *225 that an expenditure to avoid litigation under circumstances where the evidence did not show any legal liability in the taxpayer was not deductible as a business expense. Here, also, there was no liability on the part of petitioner to pay more than the value of the partner's interest in the partnership. The payment of the so-called "additional" amount of $18,750, to the estate of Nathan Friedman was neither a necessary nor an ordinary business expense. Petitioner is not entitled to this deduction as a business expense. It may also be noted that petitioner has not proved that the amount paid to the estate was more than petitioner should have paid. The assets of the partnership consisted principally of accounts receivable. As of February 5, 1935, these amounted to $304,362.34. Petitioner claims that due to the peculiar nature of the retail credit clothing business, these accounts were worth only 50 cents on the dollar. However, during the course of the litigation between himself and the estate, he executed an affidavit in which he claimed that they were collectible 100 cents on the dollar. He has not proved otherwise in this proceeding. From February 5, 1935, to December 31, 1935, petitioner *226 collected $250,207.82 on these accounts. In 1936, further collections on the accounts were made in the sum of $21,694.61. In petitioner's 1937 return there is listed as item of "bad debts recovered" in the amount of $18,563.63. At the hearing, petitioner could hot determine whether this amount was part of the $304,362.24. Petitioner did not prove that the balance of these accounts receivable were not collected in subsequent years. Even with a claim of loss on the accounts receivable, petitioner had a profit in 1935 of $52,733.98. It may be true, as petitioner claims, that the cost of collection of the accounts were such that petitioners' profits were cut down. That, however, is immaterial for present purposes. If the transaction with the estate is a purchase of the decedent's interest in the partnership as petitioner contends, his loss can only be established at the time the assets are liquidated or disposed of. Certainly he cannot establish a loss at the time of the purchase by alleging that he had paid more for the assets than they are reasonably worth. That fact can only be proved by the facts developed subsequent to the purchase, after reasonable efforts have been made to collect *227 the accounts. Under all the circumstances, petitioner is not entitled to a deduction of $18,750 as an ordinary and necessary business expense. Decision will be entered for the respondent.